UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| SUPERIOR STAR, LLC | Case No. 26-31809-crm |
| Debtor | Chapter 11 |

**EMERGENCY MOTION TO APPROVE CASH MANAGEMENT SYSTEM AND THE CONTINUED USE OF PRE-PETITION BANK ACCOUNTS**

Superior Star, LLC (the "Debtor"), by proposed counsel, moves this Court for the entry of an order, pursuant to 11 U.S.C. §§ 363 and 105[1], approving its proposed cash management system and authorizing the continued use of a pre-petition bank account. This motion is supported by the following memorandum of points and authorities and the *Declaration of Brian Bonfiglio in Support of First Day Motions* ("Bonfiglio Declaration") submitted concurrently herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1. FACTUAL BACKGROUND

### A. General Background

1. On July 9, 2026 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Kentucky, thereby commencing the above-captioned bankruptcy case.

2. The Debtor is authorized to operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

[1] Unless otherwise indicated, references to Code sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code").

3. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (M).

4. The Debtor, as franchisee, operates fifty-nine "Hardee's" quick-service restaurants (each a "Restaurant," and collectively, the "Restaurants") dispersed across ten states.

5. Fourteen of the Restaurants are located within the Western District of Kentucky, which is more than any other district.

6. In 2025, through operation of the Restaurants, the Debtor generated approximately $80,000,000 in gross revenue.

7. Despite its demonstrated ability to generate revenue, the Debtor has continually struggled against unforeseen and uncontrollable circumstances, which have prevented the Debtor from achieving consistent profitability.

8. The Debtor purchased the Restaurants in 2023 for approximately $13,000,000. In addition to the purchase price, at closing, the Debtor's principals infused $4,000,000 to improve and support the Restaurants' operations. Additionally, the Debtor's principals have contributed an additional approximately $2.0 million to the Debtor over the past two and a half years, including a recent contribution of $300,000 to ensure that payroll would be made to employees.

9. Due to various omissions and/or misrepresentations by the seller, almost immediately after acquisition of the Restaurants, the Debtor was forced to absorb extensive and unforeseen deferred maintenance and repair expenses, unpaid taxes, and other latent liabilities.

10. These unexpected expenses aggregated to millions of dollars, and deprived the Debtor of cash flow that would otherwise be available to meet debt obligations or improve operations.

11. The aged physical facilities in which the Restaurants were operating not only gave rise to the expenses discussed above, but also suppressed demand by creating an unattractive invitation to potential customers.

12. Reduced demand, coupled with industry-wide increases in food costs, severely strained the Debtor's ability to generate a profit.

13. Accordingly, prior to the Petition Date, the Debtor closed several under-performing stores and/or terminated certain leases and franchises related to those stores. Those closures and terminations saved the Debtor substantial expenses; however, with respect to some of the closed stores, the Debtor entered into agreements with the landlords and franchisor to continue paying rent. These "dark site" expenses are substantial and the Debtor intends to reject those agreements to further reduce its expenses.

14. The Debtor also became delinquent in its payment of some state sales taxes in certain locations that resulted in the taxing authorities unexpectedly levying the Debtor's bank accounts. These tax levies caused a severe strain on the Debtor's cash flows.

15. All of these challenges, when combined, created the necessity of these bankruptcy proceedings to restructure the Debtor's operations and liabilities, so that it can preserve its business for the benefit of all parties-in-interest.

16. The tax levies, in particular, precipitated the timing of the bankruptcy filing.

17. The Debtor believes that, through a reorganization that addresses the claims and liabilities of its franchisor and the entity from which the Restaurants were acquired, the

Debtor can emerge as an operationally and financially durable enterprise, with the ability to employ people, pay taxes, and otherwise be a productive corporate citizen for years to come.

**B. Pertinent Facts Relating to this Motion**

18. In the ordinary course of the Debtor's business, each Restaurant maintains a single, separate bank account, into which all of its receipts are deposited (the "Restaurant Accounts"). A schedule identifying each of the Restaurant Accounts is attached hereto as Exhibit "A."

19. Prior to the Petition Date, the funds in the Restaurant Accounts were periodically swept into an account maintained by the Debtor (the "Pre-Petition Sweep Account") at Western Alliance Bank (the "Bank").

20. All of the Debtor's financial processing and reporting systems are designed to function within this account structure, which makes it critical that the structure continue uninterrupted post-petition.

21. Upon information and belief, the Bank is a depository authorized by the office of the United States Trustee ("UST") to maintain debtor-in-possession accounts in the Western District of Kentucky.

22. Given its historical relationship with the Debtor and related institutional knowledge, the Debtor intends to open at least two debtor-in-possession accounts at the Bank (the "DIP Accounts"). One of the DIP Accounts will serve as the Debtor's general operating account ("DIP Operating Account"), which will replace the Pre-Petition Sweep Account, and the other will serve as a tax account ("DIP Tax Account").

23. By this motion, the Debtor seeks permission to leave the pre-petition Restaurant Accounts open on the following conditions:

a. No payments or disbursements will be made from the Restaurant Accounts; and

b. All funds in the Restaurant Accounts will be swept into the DIP Operating Account no less frequently than every 72 hours.

24. Funds necessary to pay taxes will be transferred from the DIP Operating Account to the DIP Tax Account, as needed.

**C. Need for Emergency Relief**

25. Expedited approval of the relief requested herein is necessary to prevent irreparable harm to the Debtor's estate and business operations. Closing all of the Restaurant Accounts, and opening replacement debtor-in-possession accounts would be a herculean task that would inevitably interrupt the Debtor's receipt of cash from some of the Restaurants.

26. Any material disruption in the Debtor's receipt of cash and management of cash flows could materially harm the Debtor's operations and prospects for reorganization.

27. Based upon the foregoing, the Debtor respectfully requests that the Court enter an order approving the Debtor's continued use of its pre-petition bank accounts.

## II. LEGAL ARGUMENT

The Debtor should be permitted to maintain the Restaurant Accounts during this bankruptcy case. The UST has established certain operating guidelines for debtors in possession intended to aid in the supervision of chapter 11 cases. Under these guidelines, a Chapter 11 debtor is generally required to close all prepetition bank accounts and open debtor in possession bank accounts. These requirements are designed to establish a clear demarcation between pre-petition and post-petition transactions and prevent the unauthorized payment of pre-petition claims. Notwithstanding the UST's general

requirements, Courts have acknowledged the benefit to the bankruptcy estate that a well-planned and administered pre-petition cash management system can provide. *See In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allowed the debtor "to administer more efficiently and effectively its financial operations and assets.").

For the reasons, and on the conditions, set forth above, the Debtor seeks permission to maintain the pre-petition Restaurant Accounts. The Debtor believes that maintaining the Restaurant Accounts is necessary to avoid significant interruption to the Debtor's business, to ensure that the Debtor's financial processing and reporting systems remain prompt and accurate, and to permit a smooth transition into post-petition operations. As such, the Debtor respectfully requests that it be permitted to maintain the Restaurant Accounts for the duration of these bankruptcy proceedings.

WHEREFORE, in order to minimize the expense to the Debtor and its estate, and to maximize efficiency, the Debtor requests that this Court enter an order:

A. Permitting the Debtor to maintain and use the Restaurant Accounts in substantially the manner described herein; and

B. Authorizing the Debtor and its Bank, to take any action reasonably necessary to carry the relief requested in this Motion into effect.

Respectfully submitted,

*/s/ Tyler R. Yeager*

CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
471 W. Main St., Suite 203
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Proposed Counsel for Debtor*

-&-

*/s/ Wesley D. Ray*
WESLEY D. RAY (AZ Bar #026351) *pro hac vice admission pending*
PHILIP R. RUDD (AZ Bar #014026) *pro hac vice admission pending*
**Sacks Tierney P.A.**
4250 N. Drinkwater Blvd. Fourth Floor
Scottsdale, Arizona 85251
Telephone: (480) 425-2600
Email: wesley.ray@sackstierney.com
Email: philip.rudd@sackstierney.com
*Proposed Counsel for Debtor*

**Certificate of Service**

I hereby certify that on July 14, 2026, a copy of the foregoing *Emergency Motion to Approve Cash Management System and the Continued Use of Pre-Petition Bank Accounts* was filed electronically. Notice of this filing will be sent to the United States Trustee and all other parties having entered an appearance in this case through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER