UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| SUPERIOR STAR, LLC | Case No. 26-31809-crm |
| Debtor | Chapter 11 |

**EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES AND HONOR PRE-PETITION BENEFIT OBLIGATIONS**

Superior Star, LLC (the "Debtor"), by proposed counsel, moves the Court for an order authorizing the Debtor to pay the pre-petition wages, and honor the pre-petition benefits, owed to its employees as of the filing of the Debtor's bankruptcy petition.

The Debtor's last pay cycle ended on June 29, 2026, for the period from June 16, 2026 through June 29, 2026, and its employees were paid on July 6, 2026 for that pay period. Between the last payroll and the filing of the Debtor's bankruptcy petition on July 9, 2026 (the "Petition Date"), approximately nine days' worth of payroll and payroll related expenses had accrued, but have not yet been paid. The Debtor's employees expect to receive their paychecks for this pre-petition time period (*i.e.*, June 30, 2026 through July 8, 2026), and for the post-petition period from July 9, 2026 through July 13, 2026, on July 20, 2026. Additionally, some paychecks that were issued for the prior payroll may not have cleared the Debtor's pre-petition bank accounts as of the Petition Date.

None of the pre-petition wages subject to being paid pursuant to this motion exceed the priority amount to which employees are entitled pursuant to 11 U.S.C. § 507(a)(4)[1]. Further, none of the wages subject to this motion are payable to insiders of the Debtor.

Payment of the employees' pre-petition wages is crucial to the maintenance of the Debtor's workforce and therefore a prerequisite to the Debtor's ability to seamlessly and effectively transition into bankruptcy. By this motion, the Debtor seeks an order authorizing the payment of the employees' wages earned or incurred prior to the filing of the Debtor's bankruptcy case, with such payment to be made in the ordinary course of the Debtor's business.

This motion is supported by the following memorandum of points and authorities and the *Declaration of Brian Bonfiglio in Support of First Day Motions* ("Bonfiglio Declaration") submitted concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

#### A. General Background

1. On July 9, 2026 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Kentucky, thereby commencing the above-captioned bankruptcy case.

2. The Debtor is authorized to operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

[1] Unless otherwise indicated, references to Code sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code").

3. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M).

4. The Debtor, as franchisee, operates fifty-nine "Hardee's" quick-service restaurants (each a "Restaurant," and collectively, the "Restaurants") dispersed across ten states.

5. Fourteen of the Restaurants are located within the Western District of Kentucky, which is more than any other district.

6. In 2025, through operation of the Restaurants, the Debtor generated approximately $80,000,000 in gross revenue.

7. Despite its demonstrated ability to generate revenue, the Debtor has continually struggled against unforeseen and uncontrollable circumstances, which have prevented the Debtor from achieving consistent profitability.

8. The Debtor purchased the Restaurants in 2023 for approximately $13,000,000. In addition to the purchase price, at closing, the Debtor's principals infused $4,000,000 to improve and support the Restaurants' operations. Additionally, the Debtor's principals have contributed an additional approximately $2.0 million to the Debtor over the past two and a half years, including a recent contribution of $300,000 to ensure that payroll would be made to employees.

9. Due to various omissions and/or misrepresentations by the seller, almost immediately after acquisition of the Restaurants, the Debtor was forced to absorb extensive and unforeseen deferred maintenance and repair expenses, unpaid taxes, and other latent liabilities.

10. These unexpected expenses aggregated to millions of dollars, and deprived the Debtor of cash flow that would otherwise be available to meet debt obligations or improve operations.

11. The aged physical facilities in which the Restaurants were operating not only gave rise to the expenses discussed above, but also suppressed demand by creating an unattractive invitation to potential customers.

12. Reduced demand, coupled with industry-wide increases in food costs, severely strained the Debtor's ability to generate a profit.

13. Accordingly, prior to the Petition Date, the Debtor closed several under-performing stores and/or terminated certain leases and franchises related to those stores. Those closures and terminations saved the Debtor substantial expenses; however, with respect to some of the closed stores, the Debtor entered into agreements with the landlords and franchisor to continue paying rent. These "dark site" expenses are substantial and the Debtor intends to reject those agreements to further reduce its expenses.

14. The Debtor also became delinquent in its payment of some state sales taxes in certain locations that resulted in the taxing authorities unexpectedly levying the Debtor's bank accounts. These tax levies caused a severe strain on the Debtor's cash flows.

15. All of these challenges, when combined, created the necessity of these bankruptcy proceedings to restructure the Debtor's operations and liabilities, so that it can preserve its business for the benefit of all parties-in-interest.

16. The tax levies, in particular, precipitated the timing of the bankruptcy filing.

17. The Debtor believes that, through a reorganization that addresses the claims and liabilities of its franchisor and the entity from which the Restaurants were acquired, the

Debtor can emerge as an operationally and financially durable enterprise, with the ability to employ people, pay taxes, and otherwise be a productive corporate citizen for years to come.

**B. Pertinent Facts Relating to this Motion**

18. As of the Petition Date, the Debtor had approximately 850 employees that are directly employed by the Debtor. Additionally, certain of the Debtor's regional managers and other above-store level employees are employees of Stella Solutions, LLC ("Stella")[2] but are paid by the Debtor. Further, certain of the Debtor's C-Suite personnel are employed by Stella but their salaries are shared, 50-50, between the Debtor and Starcorp, LLC and/or Starcorp HD, LLC (collectively, "Starcorp"), the seller of the Restaurants. Each of these employees are referred to herein as the "Employees."

19. A schedule identifying the Employees and showing the amount of payment to which each is estimated to be entitled in connection with his or her pre-petition employment is attached hereto as Exhibit "A."

20. The Debtor's payroll system is based upon bi-weekly

21. The Debtor last paid its employees on July 6, 2026 for the period from June 16, 2026 through June 29, 2026.

22. In the ordinary course of the Debtor's business, the Debtors' next payroll will occur on or about July 20, 2026, and provide compensation for services rendered from June 30, 2026 through July 13, 2026.

23. A third-party payroll service provider, ADP, Inc. (the "PEO"), provides all payroll-related functions for the Debtors, including the withholding and payment of payroll

---

[2] The Debtor's principals, Brian Bonfiglio and John Kirchhefer hold membership interests in Stella.

taxes, and all payroll funds are paid to the Employees from funds disbursed by the Debtor to the PEO.

24. As part of their compensation, and in accordance with applicable law and the Debtor's established policies, the Employees also accrue paid vacation and/or sick time off ("PTO").

25. PTO is only honored on an ongoing basis, and, unless otherwise required by law, is not redeemable for cash.

26. In addition to PTO, for the Debtor pays some or all of the health insurance premiums for certain of the Employees (but not their respective family members).

27. As of the Petition Date, there existed approximately $483,000.00 in earned but unpaid wages owing to the Employees for the pre-petition period from June 30, 2026 through July 8, 2026. *See* Exhibit A.

28. Additionally, as of the Petition Date, some paychecks to Employees may not have been cashed and/or may not have cleared the Debtor's pre-petition bank account.

29. The greatest amount of gross earned pre-petition wages due to any Employee is approximately $3,800.

30. As of the Petition Date, the Employees had accrued PTO in the ordinary course of the Debtors' operations.

**C. Need for Emergency Relief**

31. The Debtor believes that if the Employees are not promptly and fully paid for their pre-petition employment, or their pre-petition benefits are not otherwise honored, a meaningful number of Employees will terminate their employment, and that any such termination would materially harm the Debtors' operations and reorganization efforts.

32. Based upon the foregoing, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to immediately pay and honor all of the Employees' pre-petition wages and benefits, as reflected in Exhibit "A," as well as any pre-petition paychecks that did not clear the Debtor's pre-petition bank accounts prior to the Petition Date.

## II. LEGAL ARGUMENT

The payment of pre-petition wages and benefits to the Debtor's employees is critical and should be approved. Pursuant to § 105(a) of the Bankruptcy Code, this Court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The "necessity of payment" doctrine, first enunciated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882), allows a bankruptcy court to use the equitable powers bestowed by § 105 to permit a debtor-in-possession to pay pre-petition claims when payment is necessary to effectuate a successful reorganization. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").

An order allowing the payment in-full of pre-petition wages and benefits, issued pursuant to § 105(a), is a necessary and proper exercise of the Court's authority, and is in furtherance of the primary goal of Chapter 11 – the Debtor's successful reorganization. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) ("[T]he Bankruptcy Court's equitable power may be used to effectuate the purposes of Chapter 11, which include the 'restructuring of a business' finances to enable it to operate productively, provide jobs for its

employees, pay its creditors and produce a return for its stockholders.'") (citing H.R.Rep. No. 595 95th Cong. 1st Sess. 16 (1977)).

Several courts have recognized the value of uninterrupted payment to employees, and permitted debtors-in-possession to pay pre-petition wages, benefit claims, and reimbursements, if payment of such claims was necessary to effectuate a successful bankruptcy proceeding. *See In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D.La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages and benefits, and health, life, and workers' compensation insurance premiums); *In re Chateaugay Corp.*, 80 B.R. 279, 281 (S.D.N.Y. 1987) (affirming order authorizing debtor to pay certain pre-petition wages, salaries, employee-reimbursement expenses, and benefits, including payment of workers' compensation claims).

In aggregate, approximately $483,000 in pre-petition wages is due to be paid to the Debtor's Employees on or about July 20, 2026. The Debtor must timely make these payments in order to preserve its work force. Because the Debtor operates in an industry in which service is just as, if not more, important than equipment or inventory, it must maintain strong relationships with its Employees if it hopes to generate the revenues necessary to preserve and improve the Debtor's operations. Employee morale is an asset that must be conserved. The effects of a missed payroll, when coupled with the uncertainty created in the minds of Employees by the filing of bankruptcy, could be disastrous.

Notably, the relief requested herein will not harm the interests of unsecured creditors. The pre-petition wages sought to be paid herein fall well within the limits of the administrative priority dictated by the Bankruptcy Code. Section 507(a)(4) provides that amounts earned in the 180 days immediately preceding a bankruptcy are entitled to a priority to the extent of



4430134.1

$17,150. The payments sought to be approved herein arose less than 180 days prior to the Petition Date and, the greatest amount of gross pre-petition wages to be paid to any individual employee is only $3,800. As such, the employee claims addressed herein will be paid prior to any distribution to unsecured creditors, whether that payment occurs now, upon the conclusion of this bankruptcy, or in the unlikely event of a liquidation. A refusal to allow payment of the Debtor's Employees as sought herein, therefore, would provide no benefit to unsecured creditors, but undoubtedly cause significant harm to the Debtors' operations and viability.

## III. CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court enter an order:

1. Authorizing, but not directing, the Debtor to pay to, or for the benefit of, the Employees all unpaid wages earned or incurred prior to the Petition Date;

2. Authorizing, but not directing, the Debtor to withhold and pay any and all Social Security, payroll, and income taxes, whether local, state, or federal, related to the payment of the pre-petition wages, reimbursements, and benefit contributions sought to be approved herein;

3. Authorizing the Debtor to continue to pay its Employees' health insurance premium, in accordance with its established policies and procedures;

4. Authorizing the Debtor to honor any PTO accrued prior to the Petition Date, in accordance with its policies and procedures; and

5. Awarding the Debtor such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
471 W. Main St., Suite 203
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Proposed Counsel for Debtor*

-&-

*/s/ Wesley D. Ray*
WESLEY D. RAY (AZ Bar #026351) *pro hac vice admission pending*
PHILIP R. RUDD (AZ Bar #014026) *pro hac vice admission pending*
**Sacks Tierney P.A.**
4250 N. Drinkwater Blvd. Fourth Floor
Scottsdale, Arizona 85251
Telephone: (480) 425-2600
Email: wesley.ray@sackstierney.com
Email: philip.rudd@sackstierney.com
*Proposed Counsel for Debtor*

## Certificate of Service

I hereby certify that on July 14, 2026, a copy of the foregoing *Emergency Motion for Order Authorizing the Debtor to Pay Pre-Petition Wages and Honor Pre-Petition Benefit Obligations* was filed electronically. Notice of this filing will be sent to the United States Trustee and all other parties having entered an appearance in this case through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER