**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Superior Star, LLC | ) | Case No. 26-31809-crm |
| Debtor. | ) | Honorable Charles R. Merrill |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION TO (I) EXTEND EXCLUSIVITY PERIOD AND (II) EXTEND DEADLINES TO FILE CHAPTER 11 PLAN AND DISCLOSURE STATEMENT**

The Official Committee of Unsecured Creditors (the "Committee") of Superior Star, LLC (the "Debtor"), by counsel, files this objection (the "Objection") to the *Motion to (I) Extend Exclusivity Period and (II) Extend Deadlines to File Chapter 11 Plan and Disclosure Statement* [Docket No. 237] (the "Motion to Extend") filed by the Debtor. In support of this Objection, the Committee states as follows:

## INTRODUCTION

1. Cause does not exist to extend the exclusive periods (the "Exclusive Periods") for the Debtor to file and solicit votes on a plan of reorganization under section 1121 of title 11 of the United States Code (the "Bankruptcy Code") and the Motion to Extend should be denied. As set forth below: (i) although the Debtor operates fifty-nine restaurants, this single-debtor case is not so large or complex as to warrant a three-month extension; (ii) the Motion to Extend is unsupported by any declaration or other evidence and offers only generalized statements that the Debtor needs more time to "analyze" its own business; (iii) the Debtor is not paying its postpetition obligations as they come due, reporting more than $1.2 million in past-due postpetition payables as of September 30, 2026; and (iv) the Debtor identifies no plan negotiations with the Committee, the

statutory representative of the Debtor's unsecured creditors, or material progress with any other constituency in this chapter 11 case. The Committee believes that if given the opportunity, the key creditor constituencies in this chapter 11 case could quickly formulate their own plan of reorganization which would maximize creditor recovery.

2. The Committee requests that the Motion to Extend be denied. In the alternative, and only if the Court determines that some extension of the Exclusive Periods is necessary, any extension should be no longer than 30 days so that the Debtor's deadline to file a plan would be December 7, 2026.

## BACKGROUND

3. On July 9, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. [Docket No. 1; Docket No. 204, ¶¶ 1, 3].

4. Under section 1121(b) and (c)(3) of the Bankruptcy Code, the Debtor's exclusive period to file a plan was set to expire on November 6, 2026, and its exclusive period to solicit acceptances was set to expire on January 5, 2027. The Clerk likewise set November 6, 2026 as the deadline for the Debtor to file its plan and disclosure statement. [Docket No. 237, ¶ 7].

5. The Debtor, as franchisee, operates fifty-nine Hardee's quick-service restaurants dispersed across ten states. [Docket No. 19, ¶ 7; Docket No. 204, ¶ 4]. The franchisor is Hardee's Restaurants, LLC, an affiliate of CKE Restaurants, Inc. ("CKE"). [Docket No. 237, ¶ 8]. As of September 30, 2026, the Debtor reported 547 full-time employees. [Docket No. 205, p. 1]. The Debtor's operations are principally financed through a loan agreement with Western Alliance Bank

(the "Bank"), which asserts a secured claim of no less than $5,919,290.43 as of the Petition Date. [Docket No. 204, ¶¶ 5, 7].

6. On July 29, 2026, the Office of the United States Trustee (the "UST") appointed the Committee [Docket No. 74]. On August 27, 2026, the UST reconstituted the Committee, which now consists of JATN Holdings, LLC, FJ Enterprises, LLC, and Kameel & Karen Totah, Co-Trustees, Totah Trust Agreement [Docket No. 134].

7. The Debtor has had the assistance of a financial advisor throughout this case, having employed Resolute Commercial Services, LLC as its financial advisor effective as of the Petition Date [Docket No. 146]. The Debtor has also had the assistance of three sets of sophisticated counsel: Sacks Tierney P.A. [Docket No. 90], Kaplan Johnson Abate & Bird, LLP [Docket No. 89], and Greenberg Traurig LLP [Docket No. 144].

8. The Debtor has struggled with certain operational issues. For example, the Debtor has had months of difficulties both before and after the Petition Date with transferring utility accounts from StarCorp to the Debtor. [See e.g., Docket Nos. 93 and 186].

9. On October 16, 2026, the Court entered the *Third Interim Order Granting Debtor's Emergency Motion for Interim and Final Orders Authorizing the Use of Cash Claimed as Collateral and to Determine that Certain Post-Petition Revenues Are Not Cash Collateral* [Docket No. 204] (the "Third Interim Cash Collateral Order"), which authorizes the Debtor's use of cash collateral, subject to an approved budget, only through December 7, 2026, and sets a further hearing for December 1, 2026.

10. On October 21, 2026, the Debtor filed its monthly operating report for September 2026 [Docket No. 205] (the "September MOR"). The September MOR reports $2,120,467 in postpetition payables (excluding taxes), of which $1,211,594 was past due as of September 30,



27435243.v3

2026, plus an additional $23,701 in past-due postpetition taxes. [Docket No. 205, Part 2(f)–(i)]. The largest categories of unpaid postpetition payables are food ($520,101.37), utilities ($468,671.70), rent ($348,303.92), and royalties and advertising ($312,483.45). [Docket No. 205, Attachment 7]. During the same month, the Debtor paid $195,921.47 to or on behalf of insiders. [Docket No. 205, Attachment 9]. The September MOR also reports $9,032,428.61 in prepetition general unsecured debt, exclusive of the purported StarCorp subordinated note balance of $5,844,420.21. [Docket No. 205, Attachment 4].

11. The Debtor, together with its principals Brian Bonfiglio and John Kirchhefer (individually and as trustees of their respective trusts), is the plaintiff in an adversary proceeding against StarCorp, LLC and related parties (collectively, "StarCorp"), Adv. Proc. No. 26-03059-crm (the "StarCorp Litigation"), which was transferred to this Court from the District of Arizona. In the StarCorp Litigation, Messrs. Bonfiglio and Kirchhefer appear in their capacities as guarantors of the promissory note issued to StarCorp in connection with the Debtor's 2023 acquisition of its restaurants, and StarCorp has asserted counterclaims. [Adv. Proc. No. 26-03059-crm, Docket Nos. 10, 18].

12. On November 24, 2026, the Court entered a scheduling order in the StarCorp Litigation scheduling the matter for trial on September 24, 2027.

13. The Debtor has also filed a motion seeking to extend its deadline to assume or reject unexpired leases of nonresidential real property by ninety days, to February 4, 2027 [Docket No. 206]. In the motion, the Debtor proposes to hire yet another professional – Everyday Investments Realty ("EIR") – to renegotiate leases and cure costs. [Docket No. 206, ¶ 4]. This is the same professional who the Debtor's engaged prior to the Petition Date to conduct these same negotiations. Although several weeks have passed since the motion was filed, the Debtor has not

yet filed an application to employ EIR. The Debtor does not disclose in the motion that it has recently renegotiated many of its leases using EIR as a professional before the Petition Date, and now several months seeks to renegotiate its leases using EIR a second time. Nor does the Debtor explain why it believes a further renegotiation will benefit the reorganization, or why key leases are only now being addressed 120 days into this chapter 11 case.

14. The Debtor's non-payment of post-Petition Date obligations is further confirmed by *FIP Master Funding I, LLC's Limited Response to Debtor's Emergency Motion to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 232] ("FIP's Objection"). As set forth in FIP's Objection, the "Debtor did not pay post-petition rent and other monetary obligations including late charges, fees and interest due and owing to FIP under the Lease (as defined below) for August and November 2026." [Docket No. 232, ¶ 1].

15. On November 6, 2026—the final day of the Debtor's exclusive period to file a plan of reorganization under section 1121 of the Bankruptcy Code—the Debtor filed its Motion to Extend. By the Motion to Extend, the Debtor requests entry of an order extending the period during which only the Debtor may file a chapter 11 plan through and including February 4, 2027, extending the period during which only the Debtor may solicit acceptances of a plan through and including April 5, 2027, and extending the deadline to file a plan and disclosure statement through and including February 4, 2027. [Docket No. 237, ¶ 12]. The Motion to Extend is not supported by any declaration, affidavit, or other evidence.

## ARGUMENT

16. The Bankruptcy Code grants a debtor the exclusive right to file a plan during the first 120 days after the order for relief, and, if the debtor files a plan within that period, the exclusive right to solicit acceptances of that plan during the first 180 days after the order for relief.

11 U.S.C. § 1121(b), (c)(3). Once these periods expire or are terminated, any party in interest may file a plan of reorganization. 11 U.S.C. § 1121(c).

17. On request of a party in interest, a bankruptcy court may extend the Exclusive Periods for "cause." 11 U.S.C. § 1121(d)(1). "Because the Debtor is seeking the extension of the exclusivity period under § 1121(d)(1), the Debtor bears the burden of showing that 'cause' for such an extension exists." *In re Michigan Produce Haulers, Inc.*, 525 B.R. 408, 413 (Bankr. W.D. Mich. 2015); *see also In re Dow Corning Corp.*, 208 B.R. 661, 663 (Bankr. E.D. Mich. 1997) ("[A] debtor bears the burden of proof when it requests an extension of its period of exclusivity.") (citing *Teachers Ins. & Annuity Ass'n of Am. v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338 (E.D. Mich. 1981)). That burden is not satisfied by argument alone. "11 U.S.C. Section 1121(d) requires that an affirmative showing of cause, supported by evidence, be made by the party seeking the extension or reduction of time," and "the mere recitations of allegations deemed by a debtor to constitute cause for an extension of the exclusive period is insufficient to allow such an extension." *In re Ravenna Indus., Inc.*, 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982).

18. Section 1121(d)(1) of the Bankruptcy Code provides latitude to bankruptcy courts in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of "cause." *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012). "The Bankruptcy Code does not define 'cause' for extending or limiting the exclusivity period under § 1121(d)(1)." *Michigan Produce Haulers*, 525 B.R. at 413. Courts in this Circuit have considered nine factors in deciding whether to extend or terminate a debtor's statutory period of exclusivity: a) the size and complexity of the case; b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; c) the existence of good faith progress toward reorganization; d) the fact that the debtor is paying its bills as they

become due; e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; f) whether the debtor has made progress in negotiations with its creditors; g) the amount of time which has elapsed in the case; h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and i) whether an unresolved contingency exists. *See, e.g.*, *Dow Corning*, 208 B.R. at 664–65; *Energy Conversion Devices*, 474 B.R. at 507; *Michigan Produce Haulers*, 525 B.R. at 413. Ultimately, "the primary consideration should be whether or not [modifying exclusivity] would facilitate moving the case forward." *Dow Corning*, 208 B.R. at 670.

19. These factors must be applied in light of the purpose of section 1121 of the Bankruptcy Code. In enacting section 1121 of the Bankruptcy Code, Congress expressed the view that "[i]n most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors." *Lake in the Woods*, 10 B.R. at 344 (quoting H.R. Rep. No. 95-595, at 232 (1977)). An extension "should be based on a showing of some promise of probable success," and "should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory." *In re Elder-Beerman Stores Corp.*, No. C-3-97-175, 1997 WL 1774880, at *3 (S.D. Ohio June 23, 1997) (quoting S. Rep. No. 95-989, at 118 (1978)). The exclusivity period "ensures creditors will not endure unreasonable delay after a debtor files chapter 11," *Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993), and a limited period of exclusivity "assures speed by motivating the debtor to be more fair and reasonable in its negotiations with creditors, because the debtor knows that the bargaining leverage of exclusivity will soon end." *Energy Conversion Devices*, 474 B.R. at 507–08. Section 1121(d) of the Bankruptcy Code thus reflects Congress's intent "to create a balance so as to protect the right of a debtor in possession to propose and obtain the requisite consents to its plan of reorganization while

at the same time protecting creditors from abuse of chapter 11 by a debtor unwilling to negotiate in good faith with creditors." *In re AMKO Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (quoting 5 *Collier on Bankruptcy* ¶ 1121.04 (15th ed.)).

20. Here, the Debtor bears the burden of proving that "cause" exists to extend the Exclusive Periods. *Michigan Produce Haulers*, 525 B.R. at 413. This is a burden that the Debtor cannot meet, because a number of the *Dow Corning* factors weigh against it:

a. The Debtor's bankruptcy case is of decent size, but it is not so large or complex as to warrant the extension the Debtor seeks. This is a single-debtor case involving one business line—the operation of franchised restaurants under agreements with a single franchisor—and one principal secured lender. The Motion to Extend's generic reference to the "breadth of the Debtor's estate and operations" does not establish the type of size or complexity that justifies a three-month extension;

b. The Debtor has already had 120 days, with the assistance of a financial advisor and three sets of sophisticated counsel retained as of the Petition Date, to formulate a plan, and it has not shown why that period was insufficient to propose a plan;

c. The Debtor has not demonstrated good faith progress toward reorganization. No plan, term sheet, or disclosure statement has been filed. Instead, four months into this chapter 11 case, the Debtor states that it still needs to "analyze, *inter alia*, store-level performance, terms of unexpired leases, claims against Starcorp, LLC and its affiliates, and its key constituents' priorities." [Docket No. 237, ¶ 14]. These are the basic tasks

that the initial 120-day period exists to accomplish. The Debtor has also not disclosed any significant progress in negotiating the terms of its plan with: CKE, its franchisor; StarCorp, its largest unsecured creditor; its lessors, who it is seeking an extension of time to ***begin*** negotiating with; Western Alliance Bank, its pre-Petition Date lender; or the Committee. The Committee believes this is because very little progress has been made in the last four months. Indeed, the Debtor has had difficulty with some basic tasks like transferring utility accounts and paying allowed post-petition rents and other claims;

d. The Debtor is not paying its bills as they become due. As of September 30, 2026, the Debtor reported $1,211,594 in past-due postpetition payables, together with $23,701 in past-due postpetition taxes, including significant unpaid amounts owed for food, utilities, rent, and franchise royalties and advertising. At least one landlord has objected that the Debtor is at least two months in arrears on post-Petition Date rents. These administrative obligations must be paid to confirm a plan, and their continued accumulation erodes the recoveries available to creditors. At the same time, the Debtor paid $195,921.47 to or on behalf of insiders in September 2026 alone. The Debtor's use of cash collateral, moreover, is authorized only through December 7, 2026;

e. The Debtor has not demonstrated reasonable prospects for filing a viable plan. The Motion to Extend is unsupported by any declaration or other evidence, and the Debtor's "mere recitations" that additional time will

increase the likelihood of a successful confirmation process are insufficient. *Ravenna*, 20 B.R. at 889. The Debtor has not identified any source of funds to recapitalize or sell the business, and the Debtor seemingly cannot generate sufficient funds on its own to meet its existing expenses;

f. The Debtor has not demonstrated progress in negotiations with its creditors as a whole. The Motion to Extend references discussions with CKE, the Bank, and certain lessors [Docket No. 237, ¶ 15], but it does not identify any plan negotiations with the Committee, which represents the holders of more than $9 million in prepetition general unsecured claims, or StarCorp, its largest unsecured creditor;

g. Approximately four months have passed since the Petition Date. If the Motion to Extend were granted as filed, the Debtor would have nearly seven months of exclusivity to file a plan and nearly nine months to solicit acceptances of it. The length of delay, and the Debtor's refusal to pay many landlords and vendors post-Petition Date and pre-Petition Date amounts owed constitutes an impermissible "a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory." *In re Elder-Beerman Stores Corp.*, 1997 WL 1774880, at *3;

h. The Debtor is seemingly seeking an extension of the Exclusive Periods to remain in control of the direction of this case, including the treatment of the claims at issue in the StarCorp Litigation—a dispute in which the Debtor's principals have a personal stake as guarantors. "[E]xtensions are impermissible if they are for the purpose of allowing the debtor to prolong

reorganization while pressuring a creditor to accede to its point of view on an issue in dispute." *Lake in the Woods*, 10 B.R. at 345–46; and

i. There is no unresolved contingency that prevents the Debtor from proposing a plan. To the extent the Debtor relies on the pendency of the StarCorp Litigation, "litigation within the bankruptcy court over even a key dispute between the parties is not the type of contingency which justifies extension of exclusivity." *Dow Corning*, 208 B.R. at 667; *see also Lake in the Woods*, 10 B.R. at 345. This is particularly true here, where the Debtor has not sought to expeditiously advance the StarCorp Litigation over the past four months, and where the Court just set a trial date in the StarCorp Litigation for the Autumn of 2027. Indeed, 90 days from now – when the Debtor proposes to extend the exclusive period to file a plan to - the StarCorp Litigation will be in the same posture of pre-trial discovery and motion practice as it is now.

21. Nearly all of the factors identified in *Dow Corning* weigh against the extension of the Exclusive Periods requested by the Debtor. As such, the Motion to Extend should be denied.

22. What is more, the Committee believes that if it were given the opportunity to file a competing plan, that it could coordinate with other key constituencies to have a confirmable plan on file quickly, which would have broad creditor support. This is not a complicated chapter 11 case. A viable market exists for the Debtor's assets, and a meaningful market test of the value of the Debtor's business via either a sale under section 363 of the Bankruptcy Code or a new equity auction under section 1129 of the Bankruptcy Code would likely result in offers that would provide meaningful – if not complete – recoveries to many classes of creditors. Giving the Committee the

opportunity to propose a competing plan of reorganization can only enhance creditor recovery at this stage of the chapter 11 case, and it will not prevent the Debtor from proposing and confirming a chapter 11 plan if the Debtor is able to do so. To be clear, the Committee is aware of at least one third-party who has engaged well-respected Kentucky bankruptcy counsel and is willing to make a material bid for the Debtor's assets, but who is unwilling to conduct due diligence if the Debtor has the exclusive right to file a plan and undercut that third-party's work. The Committee believes that there is also another potential bidder as well, and this is without the Committee conducting any efforts to solicit bids.

23. In the alternative, to the extent that the Court determines that some extension of the Exclusive Periods is necessary, any extension should be no longer than 30 days, such that the Debtor's exclusive period to file a plan will expire on December 7, 2026—the same date through which the Third Interim Cash Collateral Order authorizes the Debtor's use of cash collateral. Nothing in the record supports any longer period. A debtor's burden "gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts." *Dow Corning*, 208 B.R. at 663–64. Any further request for an extension should therefore be granted only upon an evidentiary showing of cause.

24. The Committee reserves all rights, including the right to object to any further request to extend the Exclusive Periods, to seek to reduce or terminate the Exclusive Periods under section 1121(d) of the Bankruptcy Code, and to file a plan upon the expiration or termination of the Exclusive Periods.

[*remainder of page intentionally left blank*]

WHEREFORE, the Committee respectfully requests that the Court enter an Order (i) denying the Debtor's Motion to Extend; (ii) in the alternative, and only if the Court determines that some extension is necessary, limiting any extension of the Debtor's exclusive period to file a plan, and of the deadline to file a plan and disclosure statement, to no later than December 7, 2026, and limiting any extension of the Debtor's exclusive period to solicit acceptances of a plan filed within that period to no later than February 4, 2027; and (iii) granting such other and further relief as the Court deems fair and equitable under the circumstances.

Dated: November 12, 2026

*/s/ James R. Irving*

James R. Irving
April A. Wimberg
Patrick W. Navin
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail: april.wimberg@dentons.com
james.irving@dentons.com
patrick.navin@dentons.com

*Counsel for the Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, a copy of the foregoing document was served electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures, upon all parties in the electronic filing system in this case.

*/s/ James R. Irving*
James R. Irving
Counsel for the Official Committee of Unsecured Creditors